SNYDER *v.* STATE.

Opinion delivered July 2, 1923.

1. JURY—EXAMINATION OF JUROR AS TO MEMBERSHIP IN SECRET ORDER.—In a prosecution for murder, where suggestion was made that the presiding judge and officers of the court were members of the Ku Klux Klan, and where defendant, because of her sex, could not become a member, it was not prejudicial error to refuse to allow her to ask each of the jurors on his *voir dire* examination, whether he was a member of such organization, in the absence of any showing that the members thereof were antagonistic to defendant or to any organization to which she belonged.

2. CRIMINAL LAW—IMPROPER OPENING STATEMENT—PREJUDICE.—In a prosecution for murder any prejudice in allowing the prosecuting attorney to state, in his opening statement, that the State would prove the general character and reputation of defendant to be bad, was removed where the court ruled that such proof would be incompetent unless defendant testified in the case, and where she subsequently testified.

3. JURY—BIAS.—In a prosecution for murder of a boy about 10 years old while in the watermelon patch of defendant's father, it was not error to refuse to discharge for prejudice a juror who, on his *voir dire,* stated: "I am not very strongly in favor of firearms being where men or women can handle them, and a child 10 years old is too young to be shot at, whether accidental or otherwise, on account of being in a melon patch;" the juror stating further that he could and would discard any bias against crimes of that nature and try the case solely upon the evidence and law.

Appeal from Pulaski Circuit Court, First Division; *W. A. Boyd,* special judge; affirmed.

*Lewis Rhoton* and *X. O. Pindall,* for appellant.

The court erred in not permitting defendant to ask jurors on *voir dire* if they were not members of the Knights of the Ku Klux Klan, it being shown that the sheriff, the prosecuting attorney, his special assistant and the judge were all members of the Klan, and that defendant was not and could not be. 243 S. W. (Ark.) 869; 114 Ark. 542; 131 Ark. 6; 27 Mont. 327, 71 Pac. 3; 72 Miss. 140, 16 So. 387, 109 A. S. R. 565. The court also erred in permitting the prosecuting attorney to say in his opening statement that the State would prove the general character and reputation of the defendant was bad. 71 Ark. 415. The juror Bomar disqualified himself by his answers, and should have been excused for cause. 149 Col. 310, 117 A. S. R. 130; 73 Wis. 602, 23 Am. St. 428; 136 Mo. 227, 58 Am. St. 627; note to 9 A. S. R. 747.

*J. S. Utley,* Attorney General, *John L. Carter* and *Wm. T. Hammock,* Assistants, for the State.

No error was committed in refusing to allow appellant's counsel to ask jurors on *voir dire* if they were not members of the Ku Klux Klan. No antagonism was alleged to exist between defendant or any organization to which she belonged and the Ku Klux Klan. 154 Ark. 592 not as authority *contra.* 17 Standard Encyclopedia of Procedure, 298; 16 R. C. L. 277. The prosecuting attorney's statement of what he intended to prove was not prejudicial. No ruling was asked upon the objection

nor did appellant request an instruction on the point. 82 Ark. 540; 84 Ark. 128; 109 Ark. 346; 66 Ark. 20. The juror Bomar was not incompetent, and the court did not err in not excusing him for cause. 80 Ark. 345; 91 Ark. 441; 84 Ark. 95; 108 Ark. 425; 128 Ark. 302. 9 A. S. R. (Mass.) 747; 149 Cal. 310; 78 Wis. 603; 136 Mo. 227; 72 Miss. 140; 30 S. W. 1110.

HUMPHREYS, J. Appellant was indicted in the circuit court of Pulaski County for murder in the second degree, convicted thereon of voluntary manslaughter, and, as punishment therefor, adjudged to serve a term of four years in the State Penitentiary. From the judgment of conviction an appeal has been duly prosecuted to this court.

Appellant's first assignment of error is the refusal of the court to allow her to ask juror S. M. Maple, and each of the jurors, on his *voir dire* examination, whether he was a member of the Knights of the Ku Klux Klan. Appellant claims to have requested this information to enable her to decide whether she would reject the jurors peremptorily, having peremptory challenges at her disposal. As a basis for the information, she suggested that, on account of her sex she was not, and could not become, a member of the Ku Klux Klan, and that the court, prosecuting attorney, sheriff, deputy sheriff, and the employed attorney to assist in the prosecution were members thereof. The fact that officers of the law, conducting the trial of a cause, belonged to a particular organization in which the defendant could not hold membership, would not be a material inquiry, for that fact alone would not tend to show that prejudice resulted to the defendant because members of the jury were also members of the organization. It is the sworn duty of officers to see that persons accused of crime obtain a fair and impartial trial, and it would be contrary to their official oaths to use secret order influences in the discharge of their duties. It would be next to impossible to procure jurors or officers of the law who do not

hold membership in secret orders to which those frequently accused of crime do not belong. To make the inquiry other than impertinent and a probe into the personal affairs of jurors, it should be made to appear that the organization to which the officers and jurors belong, or that the members thereof, were antagonistic to an accused or some organization to which he belongs. No showing was made that the Ku Klux Klan or the members thereof were antagonistic to appellant or to any organization in which she held membership. *Clark* v. *State,* 154 Ark. 592.

Appellant's next assignment of error is that the court erred in allowing the prosecuting attorney to remark, in his opening statement, that the State would prove the general character and reputation of appellant to be bad. This assignment of error grows out of the following occurrence reflected by the record.

"The prosecuting attorney, in his opening statement to the jury, stated that the State had witnesses to prove the bad reputation and character of the defendant. The defendant at the time saved her exceptions to the remarks of the prosecuting attorney. 'The Court: It is only competent in case the defendant testifies in the case. The defense: Her character might not be put in issue. The State: If you don't put it in issue, the State will put it in issue. (Defendant saves her exceptions to the remarks of the prosecuting attorney). The Court: I will instruct the jury as to the law when the matter is brought up.' "

In the course of the trial appellant took the witness stand in her own behalf. She made no attempt to establish a good character by other witnesses. The State, over her objection, was permitted to prove by several witnesses, in an attempt to impeach her testimony, that her general reputation in North Little Rock for truth and morality was bad. Appellant contends that the statement of the prosecuting attorney and the proof alluded to was an unwarranted attack upon her

general character, under the guise of testing her veracity. We think not. When the prosecuting attorney made the statement, the court immediately ruled that such proof would be incompetent unless appellant testified in the case, and, in response to a further objection, stated that he would instruct the jury as to the law when the matter came up. He did so, restricting the matter to impeachment only. The instruction given by the court bearing upon this point is as follows:

"Any evidence of the reputation of the defendant here cannot be considered by you in any light against her except as showing what credibility you should give to her testimony. In other words, this evidence is competent only for this purpose, and cannot be considered by you as evidence in this case as to her guilt, and should not be considered as such." We think the testimony competent, and that the ruling of the court, together with the instruction given, prevented any prejudice resulting to appellant on account of the remark made by the prosecuting attorney in the opening statement. Section 4187, Crawford & Moses' Digest, provides that witnesses may be impeached by showing their immorality.

Appellant's next and last assignment of error is the refusal of the court to discharge juror Bomar for cause, thereby requiring her to exhaust a challenge upon him. This assignment of error is based upon answers to interrogatories propounded to Bomar, in his *voir dire* examination. indicating, it is alleged, a preconceived conviction about the case, adverse to appellant. The answer of Bomar reflecting the preconceived conviction complained of is as follows: "I am not very strongly in favor of firearms being where men or women can handle them, and a child ten years old is too young to be shot at, whether accidental or otherwise, on account of being in a melon patch." Appellant was charged with killing a boy about that age who had been in her father's watermelon patch. The answer

indicated just such bias as exists in the mind of every man against crimes of that nature. No man in sympathy with boyhood frailties would voice any other sentiment than that expressed by Bomar. It was but the honest expression of a normal man. The answer did not indicate that Bomar's opposition to that character of crime would influence his judgment in determining the innocence or guilt of appellant. On the contrary, he answered, in effect, that he could and would discard any general bias entertained by him against crimes of that nature and try the case at issue solely upon the evidence and law. We think, under these circumstances, the finding of the trial judge that Bomar was qualified to serve as a juror was correct and should be sustained.

The judgment is affirmed.